**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Asociación de Laboratorios Clínicos,**<br><br>  *Plaintiffs,*<br>**v.**<br><br>**Triple-S Advantage Inc. et al.,**<br><br>  *Defendants.* | Civ. No. 26-01013 (MAJ) |

**<u>OPINION AND ORDER</u>**

### I.  Introduction

On December 1, 2025, Asociación de Laboratorios Clinicos, Inc. ("Plaintiff") filed this declaratory judgment action against Triple-S Advantage, Inc. and Triple-S Salud, Inc. ("Defendants") in state court. (**ECF No. 1 at 1 ¶ 1**). Plaintiff is a non-profit entity that represents an association of clinical laboratories in Puerto Rico. (**ECF No. 1-1 at 1–2 ¶¶ 2–5**). Defendants are affiliated insurance companies that provide health care insurance under the federal Medicare Advantage program. (**ECF No. 1-1 at 2 ¶ 6**).

The Complaint alleges that Plaintiff's members each hold a contract with Defendants for the provision of laboratory services to individuals insured by Defendants. (**ECF No. 1-1 at 3 ¶¶ 9–10**). At issue in this litigation is a contractual term that set the "fee schedule" controlling the payments due from Defendants to Plaintiff's members for the provision of services to covered patients. (**ECF No. 10-1 at 5**); (**ECF No. 1-1 at 4 ¶ 14**). The contractual term in dispute reads as follows:

"**Fee Schedule**" shall mean the schedule of the maximum payment amount to be paid under this Agreement by Triple-S to the Provider for the provision of Covered Services to Members, which amount shall be the lesser of the following:

   a. the applicable Medicare Fee Schedule published by CMS, subject to any subsequent changes to the Medicare Fee Schedule, as amended from time to time; or
   b. the actual fees or charges billed by the Provider; or
   c. the contracted amount.

(**ECF No. 10-1 at 5**). Elsewhere, the contract also provided that "applicable fees . . . shall be subject to amendments provisions and notice requirements" and that Defendants retained the right to "amend [the] Agreement without the need to execute either an Addendum . . . or an Amended and Restated Agreement." (**ECF No. 10-1 at 10, 37**). At the time that the contract was executed, an attachment to the contract provided that applicable Medicare Fee Schedule rates would be equal to a set percentage of the 2016 Medicare Fee Schedule published by the Centers for Medicare and Medicaid Services ("CMS"). (**ECF No. 1-1 at 3 ¶ 12**); (**ECF No. 10-1 at 44**).

On May 23, 2025, Defendants notified Plaintiff's members that the fee schedule governing their agreement would be adjusted to a fixed percentage of the prices set by the 2025 Medicare Fee Schedule. (**ECF No. 1-1 at 4 ¶ 14**); (**ECF No. 10-2**). The resulting fee schedule established reimbursement rates less than those set under the previously applicable Medicare Fee Schedule. (**ECF No. 1-1 at 4 ¶ 15**). Plaintiff alleges that the reduced rates are not sufficient to cover the costs of the medical services performed by its members. (**ECF No. 1-1 at 4 ¶ 16**).

To contest the new fee schedule, Plaintiff filed the instant action before the Court of First Instance of Puerto Rico. The Complaint invokes Article 1249 of the Puerto Rico Civil Code, which renders voidable any contractual clause that authorizes unilateral

Civil No. 26-01013 (MAJ)                                                          Page 3

modifications to the terms of a contract of adhesion. (**ECF No. 1-1 at 4 ¶ 18, 9 ¶ 32**) (citing 31 L.P.R.A. § 9803). The Complaint does not set forth any additional claims.

## II. Procedural Background

On January 9, 2026, Defendants filed a Notice of Removal, removing this case to federal court. (**ECF No. 1**) (citing 28 U.S.C. § 1441 ("Removal of civil actions")). Defendants assert federal question jurisdiction under 28 U.S.C. Section 1331, which authorizes federal district courts to hear civil actions "arising under the Constitution, laws or treaties of the United States." (**ECF No. 1 at 4 ¶ 13**). On February 9, 2026, Plaintiff filed a motion to remand this case to local court, arguing that this Court lacks jurisdiction to entertain the case. (**ECF No. 9**). Plaintiff argues that this Court lacks subject matter jurisdiction over the action and removal was improper because the parties are non-diverse and the sole claim alleged in the Complaint arises under state law.

Defendants oppose the motion. (**ECF No. 13**).[1] Defendants do not dispute that the parties are non-diverse or that the Complaint does not expressly present a claim that arises under federal law. Instead, Defendants invoke the so-called "federal ingredient" doctrine, which "permits removal of a well pleaded claim sounding in state law which necessarily requires resolution of a substantial question of federal law." *Metheny v. Becker*, 352 F.3d 458, 460 (1st Cir. 2003) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983) (internal quotations omitted)). Specifically, Defendants argue that the relief Plaintiffs seek would effectively "void

---

[1]     Plaintiff filed a reply brief, (**ECF No. 19**), and Defendant filed a sur-reply, (**ECF No. 22**).

Civil No. 26-01013 (MAJ)                                                    Page 4

Defendants' lawful use of the current . . . Medicare Fee Schedule" promulgated by CMS.

(**ECF No. 13 at 4**).

### III.    Analysis

The "federal ingredient" doctrine holds that original federal jurisdiction may be established "where, regardless of whether federal or state law creates the claim, a well-pleaded complaint necessarily requires resolution of a substantial question of federal law." *Almond v. Capital Properties, Inc.*, 212 F.3d 20, 23 (1st Cir. 2000) (internal quotations and citations omitted). Thus, even where no federal law creates the cause of action asserted, federal jurisdiction may lie in a "special and small category of cases" where a state-law claim necessarily raises an "embedded federal question," such that "a federal forum may entertain [the claim] without disturbing the congressionally approved balance of federal and state judicial responsibilities." *Industria Lechera de Puerto Rico, Inc. v. Beiró*, 989 F.3d 116, 121 (1st Cir. 2021) (internal quotations and citations omitted). In order to serve as a proper basis for federal jurisdiction, the embedded federal ingredient must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution without disrupting the federal-state balance created by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Such cases where "a federal issue is [so] decisive" that a federal court may entertain a suit arising from state law between non-diverse parties are "rare." *One and Ken Valley Housing Group v. Maine State Housing Authority*, 716 F.3d 218, 224 (1st Cir. 2026). "The Supreme Court has periodically affirmed this basis for jurisdiction in the abstract[,] . . . occasionally cast doubt upon it, rarely applied it in practice, and left the very scope of the concept unclear." *Almond*, 212 F.3d at 23. "Perhaps the best one can say[,]" the First

Civil No. 26-01013 (MAJ)                                                    Page 5

Circuit has summarized, "is that this basis [for jurisdiction] endures in principle but should be applied with caution and various qualifications." *Id.*

Defendants argue that this case presents a substantial, actually disputed, and necessarily raised "federal ingredient" that may be litigated in federal court without disrupting the federal-state balance created by Congress because "Medicare Advantage standards expressly preempt state law[.]" (**ECF No. 13 at 6**) (citing 42 U.S.C. § 1395w-26(b)(3)).[2] According to Defendants, "any state-law rule that would prohibit [Medicare Advantage Organizations] from applying current . . . fee schedules" set by the CMS "would directly conflict with and be preempted by federal Medicare Advantage law." (**ECF No. 13 at 7**). Plaintiffs, in contrast, characterize this case as a "garden variety" state law contract dispute over which this Court lacks jurisdiction. (**ECF No. 9 at 2**).

Under "[t]he Medicare Advantage program, also known as Medicare Part C, [. . .] CMS contracts with . . . Medicare Advantage Organizations[,] essentially private insurers[,] who in turn contract with healthcare providers to supply core Medicare services as well as additional benefits." *Medicaid and Medicare Advantage Products Association of Puerto Rico, Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023). Among the statutory responsibilities assigned by Congress to CMS is the duty to publish a "fee-for-service schedule" that sets the prices by which "the federal government pays

---

[2]      Defendants also argue that the case raises "substantial questions regarding standing, real-party-in-interest status, and the federal jurisdictional implications of asserting contractual claims on behalf of non-party members." (**ECF No. 13 at 2, 8–10**). According to Defendants, this "compounds the federal jurisdictional analysis" and weighs in favor of the Court retaining jurisdiction over the case. (**ECF No. 13 at 2**). This argument misses the mark: to the extent that Plaintiffs lack standing to bring this suit, this Court lacks jurisdiction to entertain the case. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016) (Article III standing is a prerequisite to a federal court's subject matter jurisdiction). Any "questions regarding standing" raised by this case therefore cannot be the basis of this Court's jurisdiction to entertain the suit.

Civil No. 26-01013 (MAJ)                                                    Page  6

healthcare providers directly for a limited array of specified services according to [the fee schedule] set by CMS." *Id.* Medicare Part C includes a preemption clause holding that "[t]he standards established under [Medicare Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26(b)(3).

Standing alone, the preemptive effects of federal Medicare Advantage standards do not constitute an embedded "federal ingredient" sufficient to afford a federal court jurisdiction over a claim sounding in state contract law. The "scope of preemption" under Medicare Part C extends "beyond those laws that directly conflict with federal standards," and may very well foreclose the relief Plaintiff seeks. *See Emanuelli Hernández*, 58 F.4th at 12.[3]  Nevertheless, the fact that Defendants may defeat Plaintiff's claims with this potentially meritorious defense does not automatically confer federal jurisdiction over this case. "A federal preemption defense . . . will not confer federal jurisdiction except where an area of state law has been completely preempted." *Tofanelli v. Biogen Idec, Inc.*, Civ. No. 07-11840, 2008 WL 3824775, at *2 (D. Mass. Aug. 5, 2008) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)) (internal quotations omitted).

"Complete preemption" is a doctrine of preemption that applies where "the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint

---

[3]    The Court expresses no opinion as to whether Article 1249 of the Puerto Rico Civil Code, as applied to the contractual dispute between Plaintiff and Defendants, constitutes a state law that would "dictate the price structure for Medicare Advantage Contracts" such that it would be preempted by federal law. *See Emanuelli Hernández*, 58 F.4th at 13.

rule." *Caterpillar Inc.*, 482 U.S. at 393 (internal quotations and citations omitted). For the doctrine to apply, the "preemptive force" of a "federal cause of action" must be "so powerful as to displace <u>entirely</u> <u>any</u> state cause of action" that "comes within the scope of the federal cause of action." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 24 (1983) (emphasis added). What is required, in short, is that federal preemption sweeps so broadly that the state law claim is rendered "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence" of the federal claim. *Id.* at 23. This is no ordinary outcome: instead, "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit[,]" not a ground for removal to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Within this framework, Defendants fail to establish that this Court may exercise original jurisdiction over the Complaint. First, Defendants identify no federal cause of action arising from the Medicare Fee Schedule promulgated by the CMS. *Cf. Franchise Tax Bd.*, 463 U.S. at 24 (describing the doctrine of complete preemption as "the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *Fayard v. Northeast Vehicle Services, LLC*, 533 F.3d 42, 46 (1st Cir. 2008) (noting that "Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type") (internal citations omitted). That alone is fatal to Defendants' "complete preemption" theory of federal jurisdiction. Furthermore, the preemptive clause in Medicare Part C creates

express exceptions to the preemptive effects of the statute, necessarily rendering Medicare Part C not entirely preemptive of state law. *See* 42 U.S.C. § 1395w-26(b)(3); *see also Medicaid and Medicare Advantage Products Association of Puerto Rico, Inc. v. del Valle Lecaroz*, Civ. No. 24-1084, Dkt. No. 96 (D.P.R. Jan. 15, 2026) (noting that CMS—the federal agency tasked with enforcing Medicare Part C—has itself opined that "preemption operates only when CMS creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe that preemption would be warranted.") (internal quotations and citations omitted). Defendants acknowledge this fact. (**ECF No. 13 at 6**) (noting that there are exceptions to the preemptive effect of Medicare Advantage standards).[4] Indeed, this District has previously explained that Medicare Part C does not broadly preempt contractual claims between Medicare Advantage organizations and health care providers, since "the Medicare Act does not provide a procedure for resolving [those] disputes[.]" *Medical Card System v. Equipo Pro Convalecencia*, 587 F. Supp. 2d 384, 388–399 (D.P.R. 2008). Defendants' theory of "complete preemption" therefore fails. *See Attenello v. United Healthcare Ins. Co.*, Civ. No. 25-02258, 2025 WL 2823131, at *2 (C.D. Cal. Oct. 2, 2025) (finding that a state law contract claim regarding service fees governed by Medicare Part C fee schedule could not be removed to federal court).

---

[4]      Defendants do claim that the First Circuit has previously held that a 2003 amendment to the Medicare statute "expand[ed] the scope of express Medicare preemption from conflict preemption to field preemption." (**ECF No. 13 at 6**) (quoting *Emanuelli-Hernández*, 58 F.4th at 12) (internal quotations omitted). That is a misrepresentation of the law: in the sentence immediately following the one quoted by Defendants, the First Circuit cautioned that "we are not sure the labels of 'conflict' and 'field' preemption are especially helpful [here]." *Emanuelli-Hernández*, 58 F.4th at 12.

Defendants raise no additional grounds for removal.[5] This case is therefore a far cry from the rare case in which "federal ingredient" jurisdiction exists. *See, e.g., Maine State Hous. Auth.*, 716 F.3d at 224 (finding federal ingredient jurisdiction where the case "involve[d] a federal contractor's implementation of a federal program; the contracts at issue were drafted and approved by a federal agency and signed by a federal official; and the plaintiffs allege[d] that the contractor . . . was in breach of the agreement by following a guideline promulgated by a federal agency pursuant to a federal statute.").[6] Instead, this case presents an ordinary claim sounding in state contract law, against which Defendants have raised a potential federal defense.[7] Because that does not suffice to establish federal ingredient jurisdiction, the instant Motion to Remand is **GRANTED**.

## IV.   Conclusion

"Federal courts are courts of limited jurisdiction," and "this Court has the responsibility to police the border[s]" of its jurisdictional powers. *Colón v. Díaz*, 174 F. Supp. 3d 667, 669 (D.P.R. 2016). "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that

---

[5]   As noted above, Defendants do argue that this case presents federal issues relating to Article III standing requirements. As previously explained, those arguments do not support the exercise of original federal subject matter jurisdiction over this case.

[6]   Notably, the First Circuit emphasized in *Maine State Housing Authority* that, "[s]ingly, one of these 'federal ingredients'—a claim against a federal contractor; an agreement drafted and approved by a federal agency; a defense based on a federal statute or guideline—would be sufficient to establish 'arising under' jurisdiction." *Maine State Hous. Auth.*, 716 F.3d at 224.

[7]   Although the parties do not address this issue, the Court notes that it makes no material difference that the claim in question is a claim for a declaratory judgment. *See Franchise Tax Bd.*, 463 U.S. at 18 (holding that federal courts do not have original jurisdiction when a federal question is presented by a claim for a state declaratory judgment where, if plaintiff had sought federal declaratory judgment, federal jurisdiction would be barred under *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)).

Civil No. 26-01013 (MAJ)                                                    Page 10

the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27–28. Here, the Court lacks jurisdiction over the instant case because Plaintiff's right to relief does not necessarily depend on the resolution of a substantial question of federal law. Accordingly, the Court **GRANTS** the instant "Motion to Remand." The Complaint will be remanded to local court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of May, 2026.

**/s/ María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**